IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GIAN SINGH SAMBHI, SATNAM SAMBHI, and
JETINDER SAMBHI,

                 **Plaintiffs,**

v.                                              CIV. No: 09-CV-1053
                                              MCA/KBM

HARPREET SINGH, PARMJIT SINGH, and
AMAN SHARMA, BABABUDHAJI CORP.;
GURUNANAKDEVJI CORP.;
PSJ, CORP., Inc.; and ADJ, CORP.;
New Mexico Corporations,

                 **Defendants.**

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO DISMISS AND LIFTING THE STAY

**THIS MATTER** is before the Court on Defendants' *Motion To Dismiss Plaintiffs' First Amended Complaint* [Doc 69] and Plaintiffs' *Motion To Lift The Stay And Allow Plaintiffs To View And Inspect Properties* [Doc 85]. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies Defendants' *Motion* and grants-in-part Plaintiffs' *Motion*, lifting the stay.

**I.**      **BACKGROUND**

Plaintiffs' original *Complaint* [Doc 1] was dismissed by this Court on August 31, 2010 [Doc 66]. Plaintiffs, however, were granted leave to amend, and on September 13, 2010, they filed *Plaintiffs' Verified First Amended Complaint For Breach of Fiduciary Duty, Conversion, Unjust Enrichment, Declaratory Relief, Accounting, Constructive*

*Fraud, Fraud, Negligent Mismanagement Of The Hotels And The Corporations, Appointment Of A Receiver, And Damages* (*Amended Complaint*) [Doc 67]. The *Amended Complaint* raises similar claims against the same defendants, individuals Hapreet Singh, Parmji Singh, Aman Sharma, and four Corporations: Bababudhaji Corporation, Gurunanakdevji Corporation, PJS Corporation Incorporated, and ADJ Incorporated.[1] Those claims are for breach of fiduciary duty, conversion, unjust enrichment, constructive fraud, and fraud. The Defendants are the directors and three of the shareholders of the Corporations, which consist of three Grants-based motels and one motel located in Gallup. [Id. at 2] Plaintiffs are the remaining three shareholders. On September 28, 2010, the Defendants and the Corporations filed a *Motion To Dismiss Plaintiffs' First Amended Complaint* [Doc 69].

## II.     ANALYSIS

At the outset, the Court has considered Plaintiffs' *Amended Complaint* and their response to Defendants' *Motion* and finds that the *Amended Complaint* is sufficient to withstand dismissal under Rule 12(b)(6). The following analysis is not intended to limit Plaintiffs' claims, but rather to illustrate the viability of the *Amended Complaint*.

### A.     Standard Of Review

This Court exhaustively stated the proper standard for review under Federal Rule of Civil Procedure 12(b)(6) in its previous *Memorandum Opinion And Order*. [See Doc

---

[1] For simplicity, the Court refers to the three individuals as "Defendants" and the four entities as the "Corporations."

66 at 2-5] Nevertheless, the standard places the entire inquiry before the Court in context and accordingly bears repeating.

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." The sufficiency of a complaint is a question of law, and when considering and addressing a motion to dismiss pursuant to rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006). Further, in order to withstand a rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (Twombly). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." and Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal citation omitted) (Iqbal). If a plaintiff cannot nudge the claims "across the line from conceivable to plausible," the complaint must be dismissed. Twombly, 550 U.S. at 570.

In handing down Twombly, the United States Supreme Court invalidated the longstanding rule that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Conley standard has proved problematic over the years because it suggests

that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46). As a result, defendants may be forced to bear the burden and expense of discovery before they are afforded a real opportunity to seek the dismissal of groundless claims, while plaintiffs may use the burdensome discovery process as leverage to induce otherwise unjustified settlement of such groundless claims. See Twombly, 550 U.S. at 557-59.

A complaint is now subject to dismissal under the new standard if it does not "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hask, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).

Two "working principles" underlie the Twombly standard. Iqbal, 129 S.Ct. at 1949.

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-

> specific task that requires the reviewing court to draw on its judicial experience and common sense.

Id. at 1949-50 (internal citations omitted). Thus, in order to evaluate a motion to dismiss, the Court engages in a two-part inquiry by initially identifying those allegations that are nothing more than legal conclusions and therefore "not entitled to the assumption of truth" and then considering whether the factual allegations "plausibly suggest an entitlement to relief." Id. at 1951. The Court begins by evaluating the elements of the pleaded causes of action, in order to determine whether the complaint states sufficient factual material to implicate a plausible claim for relief. See id. at 1947.

**B.     Breach of Fiduciary Duty**

Plaintiffs' bring a direct action for breach of fiduciary duty pursuant to an exception to the general rule requiring shareholders to sue, in a derivative action, on behalf of the corporation. In New Mexico, a shareholder may bring a direct action when he has "suffered an injury separate and distinct from the other shareholders." Marchman v. NCNB Texas Nat'l Bank, 120 N.M. 74, 81-82, 898 P.2d 709, 716-17 (1995) (internal quotation marks and citation omitted). Pursuant to this principle, the New Mexico Court of Appeals has held that a shareholder in a close corporation owes fiduciary duties to other shareholders and that an action for breach of this fiduciary duty "can be asserted as an individual claim separate from the remedies available under our statutory corporate law for oppressive conduct." See Walta v. Gallegos Law Firm, P.C., 2002-NMCA-015, ¶¶ 38, 41 131 N.M. 544, 40 P.3d 449.

The fiduciary duties between close-corporation shareholders include the following: a duty of loyalty to each other; a duty to fully disclose material facts regarding transactions and dealings; a duty to deal openly, honestly, and fairly with other shareholders; and a duty to avoid self-seeking conduct and self-dealing.  Id.  ¶ 49.  The courts enforce these duties as between majority and minority shareholders, see id. ¶ 34, and between equal shareholders.  See Clark v. Sims, 2009-NMCA-118, ¶ 12, 147 N.M. 252, 219 P.3d 20.  A close corporation typically evidences "(1) a small number of stockholders, (2) no ready market for the corporate stock, and (3) substantial majority stockholder participation in the management, direction and operations of the corporation." Walta, 2002-NMCA-015, ¶ 32.

Turning to the allegations in Plaintiffs' *Amended Complaint*, they have sufficiently alleged that the four Corporations are closely held corporations.  Specifically, it appears that Plaintiffs and Defendants are the only shareholders and that the Corporations were formed for the purpose of acquiring and managing four motels in western New Mexico. As a result of the limited purposes for the Corporations, there is unlikely to be a ready market for the corporate stock.  In addition, Plaintiffs have repeatedly alleged that Defendants were in daily control of the Corporations—that Defendants prevented Plaintiffs from having "any corporate involvement."  [Doc 67 at 23]  Accordingly, New Mexico law permits Plaintiffs, as shareholders, to seek recovery for breach of fiduciary duty from Defendants, the remaining shareholders, without resorting to a derivative action.  See id. ¶ 47-48.

Defendants contend that Plaintiffs are not entitled to maintain a direct action for breach of fiduciary duty because they "have not alleged a single injury that is separate and distinct from that of the [C]orporations." [Doc 70 at 3] Defendants accuse Plaintiffs of misstating the test. [Doc 75 at 2] Pointing to Rael v. Page, 2009-NMCA-123, ¶ 12, 147 N.M. 306, 222 P.3d 678, Defendants claim that a direct action requires "that the rights of the suing shareholder exist independently of any right of the corporation." [Id.] Defendants misconstrue the "separate injury" requirement.

Rael specifically states that "[g]enerally, direct actions are those brought by a shareholder to recover from corporate officers, directors or others . . . when he or she sustains a special injury, . . . separate and distinct from that suffered by other shareholders *or* a wrong involving a contractual right of a shareholder . . . which exists independently of any right of the corporation." Id. (emphasis added) (internal quotation marks and citation omitted). Indeed, the New Mexico Court of Appeals has specifically refuted Defendants' characterization: "the direct action exception to the general rule requiring derivative suits was not for a shareholder who suffers an injury that is separate and distinct from the corporation; instead, the exception was for a shareholder who suffers an injury separate and distinct from other shareholders." Clark, 2009-NMCA-118, ¶ 14 (internal quotation marks and citation omitted). Plaintiffs have pleaded sufficient facts to demonstrate an injury "separate and distinct" from other shareholders—the only other shareholders being Defendants themselves.

For example, Plaintiffs maintain that Defendants have not kept minutes, have

made corporate decisions without the presence of a quorum, and have refused to allow Plaintiffs to have access to corporate books and financial records. [Doc 67 at 24-25] Plaintiffs further allege that Defendants have made numerous purchases with corporate funds without Plaintiffs' approval or notification. These expenditures include ostensibly business purchases, such as a carwash business, as well as arguably personal purchases, such as vacations, meals, travel, and clothing. [Id at 17, 25] In addition, Plaintiffs claim that Defendants Hapreet Singh and Aman Sharma have been paid "monthly management fees" that are in excess the management fees that were set by the contract. [Id. at 18, 26] Defendants have also allegedly failed to disclose to Plaintiffs that the Corporations have encountered problems with the franchise agreements, insurance, cash flow, salaries, and stock ownership. [Id. at 29] In addition to withholding information, Plaintiffs state that Defendants have failed to issue stock certificates in accord with ownership shares, to account properly for expenditures, and to make share distributions that are coextensive with actual share ownership. [Id. 11, 18-19]

  Taken as true, these facts allege that Defendants have uninhibited access to the corporate assets, that Defendants have used those assets in order to finance their personal lives, that Defendants have closed off Plaintiffs' access to the books and records, that Defendants have failed to record their actions, that Defendants have made decisions regarding the Corporations without consulting Plaintiffs, and that Defendants determine their own salaries to be paid from the corporate coffers. This state of affairs sufficiently pleads injuries to Plaintiffs that are "separate and distinct" from other shareholders. See

id., ¶ 15 (identifying a "distinct" injury where the defendant shareholder "transferred the corporation's sole asset to himself and took cash out of the asset" leaving himself "in a much better position" than the plaintiff shareholders). New Mexico law clearly requires shareholders in close corporations to be loyal to each other, to fully disclose material facts regarding transaction, to deal openly and honestly with each other, and to avoid self-seeking conduct and self-dealing. Walta, 2002-NMCA-015, ¶ 49.

Accordingly, the Court finds that Plaintiffs' *Amended Complaint* states a claim for breach of fiduciary duty.

**C.** **Conversion**

Plaintiffs' direct action for conversion is also based on Marchman's exception to the general rule of derivative actions: "Shareholders acquire standing to maintain actions in their own right when they have suffered an injury separate and distinct from the other shareholders or when they are owed a special duty by the wrongdoer." Marchman, 120 N.M. at 82, 898 P.2d at 717. Conversion is the "unlawful exercise of dominion and control over personal property belonging to another in exclusion or defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." Santillo v. N.M. Dep't of Pub. Safety, 2007-NMCA-159, ¶ 30, 143 N.M. 84, 173 P.3d 6.

Beginning with the elements of conversion, Plaintiffs have pleaded that Defendants have control over Plaintiffs' property—stock certificates in the Corporations and that Plaintiffs have a right of possession in those certificates after having invested in

the Corporations.  See Restatement Second (Torts) § 242(1) (1965) ("Where there is conversion of a document in which intangible rights are merged, the damages include the value of such rights.").  Specifically, Plaintiffs alleged that "Defendants . . . had control of the issuance of stock certificates for the Corporations and did not issue stock certificates to Plaintiffs in accordance with the ownership shares Plaintiffs were entitled to receive based on the consideration for their capital contributions they made."  [Doc 67 at 11]  Plaintiffs maintain that they demanded the return of their stock certificates by means of repeated demands for an accounting of corporate expenditures and repeated demands for access to the corporate records and books.  [Doc 73 at 30; Doc 67 at 28, 36]  Based on these alleged facts, Plaintiffs have properly pleaded the elements of conversion.

Defendants respond that Plaintiffs have failed to assert a direct, rather than a derivative claim.  [Doc 70 at 4-5]  Again, the Marchman exception to the general rule of derivative actions requires that Plaintiffs suffered "injury separate and distinct from other shareholders."  120 N.M. at 82, 898 P.2d at 717.  Taking Plaintiffs' allegations to be true, Plaintiffs did not receive stock certificates in return for their capital contributions.  Plaintiffs have alleged that they and Defendants are the only shareholders, thus the reasonable inference is that Defendants have Plaintiffs' stock certificates.  See Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010) (accepting "all factual allegations in the complaint as true and draw[ing] all reasonable inferences in favor of the nonmoving party, here the plaintiff").  Thus, it is plausible that Plaintiffs have suffered an injury separate and distinct from Defendants, and as a result, they may maintain a direct action

for conversion.[2]

**D.      Unjust Enrichment**

"Unjust enrichment exists when one party knowingly benefits at another's expense and allowing that party to retain the benefit would be unjust." Romero v. Bank of the Southwest, 2003-NMCA-124, ¶ 34, 135 N.M. 1, 83 P.3d 288.

> New Mexico has long recognized actions for unjust enrichment. . . .  To prevail on an unjust enrichment claim, a party must demonstrate that:  [I] another has been knowingly benefitted at one's expense [ii] in a manner such that allowance of the other to retain the benefit would be unjust.  The theory has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity.

Applied Capital, Inc. v. Gibson, 558 F.Supp.2d 1189, 1200-01 (D.N.M. 2007) (alterations in original) (internal quotation marks and citation omitted).  Defendants argue that Plaintiffs have failed to state a direct cause of action for unjust enrichment and that the Corporations, and not Defendants, benefitted from the alleged activities of Defendants.  [Doc 70 at 6]  Specifically, Defendants argue that they "benefitted only by virtue of their ownership of shares in the [C]orporations, just like every other shareholder."  [Id.]

To the contrary, however, Defendants' actions allegedly led them to have more

---

[2] It should be noted that a successful claimant for conversion cannot receive both monetary damages *and* the return of the property.  See Sec. Pacific Fin. Servs. v. Signfilled Corp., 1998-NMCA-046, ¶ 16, 125 N.M. 38, 956 P.2d 837 (holding that the plaintiff was not "entitled to both the return of the mobile home under the theory of replevin and damages under the theory of conversion in the amount of the value of the mobile home at the time of conversion.").

shares than Plaintiffs and thus, a greater benefit.  Defendants were obligated to issue stock certificates to Plaintiffs, which represented Plaintiffs' financial contribution to the Corporations.  Instead, Defendants allegedly wrongfully manipulated the ownership shares and thus, retained a greater benefit—greater ownership in the Corporations—than Plaintiffs.  At this stage in the proceedings, Plaintiffs are entitled to maintain their direct action for unjust enrichment.

### E.      Declaratory Relief/Accounting

Plaintiffs' *Amended Complaint* seeks declaratory relief "in order to ascertain the correct stock ownership and reissue stock certificates in accordance with the correct ownership of the shareholders in the four corporations."  [Id. at 35]  In addition, Plaintiffs assert that "[a]n accounting is necessary to determine the appropriateness of various transactions to include corporate expenditures, income, loans and monies taken in by the Corporations as well as any accounting for all corporate distributions."  [Id. at 36]

In their *Motion*, Defendants do not address these claims for declaratory relief and accounting.  Accordingly, the Court does not consider these allegations to be included in Defendants' *Motion To Dismiss*, and they will not be addressed herein.

### F.      Constructive Fraud

"Constructive fraud is the breach of a legal or equitable duty which the law terms fraudulent because of the tendency to deceive others."  Vigil v. Rio Grande Ins. of Santa Fe, 1997-NMCA-124, ¶ 22, 124 N.M. 324, 950 P.2d 297.  Constructive fraud, however, "need not be based upon a fiduciary relationship between the parties, as constructive

fraud is defined as acts contrary to public policy, to sound morals, to the provisions of a statute, etc., however honest the intention with which they may have been performed." Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd., 113 N.M. 9, 13, 920 P.2d 1323, 1327 (1991).  In Golden Cone Concepts, Inc., a vendor sued a mall for constructive fraud, among other things.  Id. at 10, 920 P.2d at 1324.  The Supreme Court of New Mexico upheld the district court's finding of constructive fraud based on "the Mall's pattern of conduct of making representations for the purpose of gaining confidence of prospective tenants and inducing them into entering a lease contrary to equitable principles of fairness, justice, and right dealing that dominate all commercial practices and dealings." Id. at 1327-28, 920 P.2d at 13-14.

Plaintiffs have pleaded that Defendants made repeated representations that if Plaintiffs were to invest, stock certificates would issue in their name and the Corporations would acquire particular real property.  [Doc 67 at 37]  Instead, according to the *Amended Complaint*, Defendants took Plaintiffs' funds and used those funds for personal expenditures and further, did not issue stock to Plaintiffs or sold Plaintiffs' stock without compensation.  [Id. at 37-38]  Further, Plaintiffs have alleged that at the encouragement of Defendants Parmjit Singh and Hapreet Singh, they contributed capital in order for a Comfort Inn to be purchased in the name of PJS Corporation, Inc.  [Id. at 11]  Plaintiffs allege that Gian Sing Sambhi contributed 33.5%, Satnam Singh contributed 13%, and Jetinder Singh contributed 10% and that each Plaintiff expected to receive a pro rata share in PJS Corporation, Inc.  [Id.] Defendants Parmjit Singh and Hapreet Singh, however,

purchased the Comfort Inn in the name of Parmjit Singh, his wife, and Harpreet Singh. Gian Sambhi also received an interest, but it was a lesser 31% interest. [Id.] Satnam Singh and Jetinder Singh allegedly received no ownership interest. [Id. at 11-12] Each of these pleaded circumstances supports a "pattern of conduct making representations for the purpose of gaining confidence . . . contrary to equitable principles of fairness, justice, and right dealing. . . ." Id. In addition, each of these instances involves an injury to a single shareholder that is distinct and separate from other shareholders. Plaintiffs may maintain a direct claim against Defendants for constructive fraud.

### G.     Fraud

"An actionable fraud is a misrepresentation of a fact, known to be untrue by the maker, and made with an intent to deceive an to induce the other party to act upon it with the other party relying upon it to his injury or detriment." Wilde v. Wilde, 2010-NMCA-085, ¶ 50, 148 N.M. 627, 241 P.3d 628 (internal quotation marks and citation omitted). Defendants contend that Plaintiffs have failed to plead their fraud allegations with sufficient particularity, as required by Federal Rule of Civil Procedure 9(b). [Doc 70 at 8] Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." A complaint that alleges fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Koch v. Koch Indus., Inc., 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotation marks and citation omitted). The purpose of Rule 9(b) is to "afford defendant fair notice of plaintiff's claims and the

factual ground upon which [they] are based. . . ." Id. (alterations in original) (internal quotation marks and citation omitted).

Turning to the *Amended Complaint*, this Court is satisfied that despite their representations to the contrary, Defendants have had fair notice of Plaintiffs' claims and the factual grounds on which they are based.  For example, Plaintiffs allege that "Defendants . . . made fraudulent misrepresentations to Plaintiffs . . . that in exchange for funds from [the Corporations], used to purchase the Comfort Inn, Gallup, New Mexico (ADJ, Inc), Plaintiffs . . . would receive stock ownership representative of their capital contributions, but the Plaintiffs were never actually issued the appropriate stock for Plaintiffs' capital contributions. . . ." [Doc 67 at 42]  Plaintiffs have alleged that they made their investments relying on Defendants' representations that stock would issue in return for a capital investment. [Id. at 42-44]  Further, Plaintiffs alleged that Defendants had control of the issuance of stock certificates, they allege the date of the transaction—October 31, 2005—and they allege the identities of the parties who made the false statements.  [Id. at 7]  Because Defendants controlled the issuance of stock certificates, they promised Plaintiffs that they would issue stock certificates, and they did not issue stock certificates, the reasonable inference is that Defendants knew that no stock certificates would issue after Plaintiffs made their capital investment. Defendants argue that Plaintiffs have not provided "plausible support . . . that Individual Defendants' statements prior to the purchase were false."  At this stage, however, this Court must draw "critical inferences" in Plaintiffs' favor.  Pace v. Swerdlow, 519 F.3d 1067, 1073 (10th

Cir. 2008). Plaintiffs have pleaded sufficient facts for this Court to draw this critical inference—regarding Defendants' knowledge of falsity—in their favor.

### H. Negligent Mismanagement

In the *Amended Complaint*, Plaintiffs contend that Defendants mismanaged the Corporations by the following acts:

> (1) failing to make adequate repairs and maintain appropriate maintenance of the various hotels;
>
> (2) failing to pay the franchise fee for the Travelodge in Grants, New Mexico;
>
> (3) failing to adequately maintain the Super 8 in Grants, New Mexico;
>
> (4) failing to ensure that the Super 8 facility met the franchise quality assurance standards;
>
> (5) failing to cure a prior default notice during re-inspection, and placing the Franchise agreement in jeopardy of being terminated;
>
> (6) failing to adequately maintain the Travelodge in Grants, New Mexico and placing the insurance coverage of the premises in jeopardy;
>
> (7) co-mingling corporate funds;
>
> (8) not properly accounting for funds that have been utilized by the Corporations;
>
> (9) using corporate funds for personal expenditures;
>
> (10) not keeping shareholders apprised of the status of various matters;
>
> (11) not properly providing dividends to the appropriate shareholders;
>
> (12) using corporate credit cards for personal expenses to include shopping sprees and vacations;

>(13) failing to account for various expenditures, including, but not limited to, petty cash;
>
>(14) authorizing expenditures for the benefit of Defendants, but not Plaintiffs;
>
>(15) operating the Corporations in a manner that resulted in the receipt of complaints;
>
>(16) failing to properly account for "excessive" room refunds.

[Doc 67 at 49]  Defendants respond that these facts support derivative claims, to be brought on behalf of the Corporations, and not direct claims to be brought by Plaintiffs as shareholders.  [Doc 70 at 9-10]

Most of these claims do not result in injuries that are distinct to Plaintiffs.  For example, in failing to make repairs, pay franchise fees, maintain premises, conform to the franchise agreements, the Corporations suffered, and resultantly, the individual shareholders all suffered indirectly by the diminution in value of their shares.  See Healthsource, Inc. v. X-Ray Associations of N.M., 2005-NMCA-097, ¶ 26, 138 N.M. 70, 116 P.3d 861 ("[I]n accordance with Marchman, the framework in which to analyze [the p]laintiff's claims against [the d]efendants is to first ask whether [the p]laintiff's injury is an indirect harm arising primarily from an injury inflicted upon [the corporation] by [the d]efendants.").  Nevertheless, Plaintiffs have alleged that Defendants did not properly distribute dividends amongst the shareholders, which is a direct harm to Plaintiffs, and which resulted in a distinct and separate injury from other shareholders.  As a result, their claim for negligent mismanagement survives Defendants' *Motion*.

**I.      Receivership**

On March 9, 2010, Plaintiffs filed an *Emergency Motion For Appointment Of A Receiver* [Doc 41].   United States Magistrate Judge Richard L. Puglisi entered a *Memorandum Opinion And Order Denying Plaintiffs' Emergency Motion For Appointment Of A Receiver* on May 18, 2010 [Doc 51].  Judge Puglisi concluded that "[a]t this stage in the proceedings, Plaintiffs affidavits are an insufficient basis upon which  to order the extraordinary remedy of appointment of a receiver" and further that "the parties appear to have adequate legal remedies to protect their rights."  [Id. at 3] After this ruling by Judge Puglisi, this Court dismissed Plaintiffs' original *Complaint* and granted leave to file an amended complaint.  [Doc 66 at 10]  In the *Amended Complaint*, Plaintiffs included a claim for "Appointment of a Receiver."  [Doc 67 at 50]

In their *Motion*, Defendants argue that Plaintiffs' claim for appointment of a receiver should be dismissed because Judge Puglisi's *Memorandum Opinion And Order* establishes the law of the case.  [Doc 70 at 10]  Plaintiffs dispute this characterization of Judge Puglisi's *Order* and further maintain that "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance."  [Doc 73 at 50] Plaintiffs acknowledge, however, that "as a rule courts should be loathe to do so in the absence of extraordinary circumstances. . . ."  [Id.] Such circumstances, Plaintiffs argue, are to be found in the "new facts and new allegations [that] have come to light and have been alleged in the *Amended Complaint*."  [Id. at 50-51]

"It is generally recognized that the district court has broad powers and wide

discretion to determine . . . relief in an equity receivership." S.E.C. v. Vescor Capital Corp., 599 F.3d 1189, 1194 (10th Cir. 2010) (alteration in original) (internal quotation marks and citation omitted). The purpose of an appointed receiver is "to safeguard the assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." Id. (internal quotation marks and citation omitted). Judge Puglisi's *Order* stated that "Plaintiffs appear to have a valid claim as shareholders to their interest in the property at issue." [Doc 51 at 3] The denial of Plaintiffs' *Emergency Motion* was clearly tied to outstanding factual questions and to Plaintiffs' failure, at that time, to produce sufficient support for their request. [Id.] Despite Judge Puglisi's Order, this Court continues to have its "broad powers and wide discretion" to appoint a receiver in order to safeguard and distribute the assets. Id.

Nevertheless, Plaintiffs do not appear to renew their emergency motion, and thus, this Court is not required to revisit Judge Puglisi's ruling at this time. Judge Puglisi's preliminary, pretrial, prediscovery ruling, however, does not automatically limit or curtail this Court's equitable powers. Accordingly, the Court will not dismiss at this time Plaintiffs' claim for "Appointment of a Receiver".

### J.   Corporations

Finally, Defendants contend that the Corporations should be dismissed as defendants because Plaintiffs the *Amended Complaint* "contains no factual allegations against the Corporate Defendants." [Doc 70 at 10] "It is well settled . . . that a member or shareholder of a corporation may sue the corporation either at law or in equity." William

Meade Fletcher, 12B <u>Fletcher Cyclopedia of the Law of Corporations</u>, § 5909, 500 (2009).  Plaintiffs have sued the Corporations in order to appoint a receiver, for an accounting, and for the re-issuance of stock certificates.  Pursuant to Fed. R. Civ. P. 19(a)(1)(A), without the Corporations' presence in the suit, "the court cannot accord complete relief among existing parties."  At this stage of the proceedings, the Corporations remain as defendants.

### III.   CONCLUSION

For the reasons stated above,

**IT IS THEREFORE ORDERED** that the *Motion To Dismiss Plaintiffs' First Amended Complaint* [Doc 69] is **DENIED**;

**IT IS FURTHER ORDERED** that the *Motion To Lift The Stay And Allow Plaintiffs To View And Inspect Properties* [Doc 85] is **GRANTED-IN-PART to the extent that the Stay previously imposed by this Court is hereby lifted**.

**SO ORDERED** this 7th day of September, 2011, in Albuquerque, New Mexico.

                                            M. CHRISTINA ARMIJO
                                            United States District Judge